**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

ERICK JESUS CARCAMO LOPEZ,

Petitioner,

v. CIVIL ACTION NO. 3:26-0674

DAVID VENTURELLA,
Acting Director, United States Immigration and
Customs Enforcement,
MARKWAYNE MULLIN,
Secretary of Homeland Security;
TODD BLANCHE,
United States Attorney General;
KENNETH BARNETT,
Supervisory Detention and Deportation Officer,
United States Immigration and Customs Enforcement;
JOHN RIFE,
Field Office Director, Philadelphia Field Office,
United States Immigration and Customs Enforcement;
in their official capacities,

Respondents.

## MEMORANDUM OPINION AND ORDER

The Court granted the Petition and ordered Petitioner **Erick Jesus Carcamo Lopez** released on October 27, 2026. ECF No. 13. This Opinion sets forth the reasons for that decision.[1]

### I. BACKGROUND.

Petitioner was arrested on the morning of October 21, 2026, within the interior of the United States, in or around Cross Lanes, West Virginia, following a traffic stop. Resp. at 5, ECF

[1] The Petition was initially filed as a next friend petition. *See* Pet., ECF No. 1.

No. 7. He was then transported to the ICE processing facility in Poca, West Virginia. *Id.* The Petition was initially entered around 10:22 A.M. on the same day. *See* Pet.

Petitioner alleges that his detention violated (1) the Fifth Amendment's Due Process Clause and (2) 8 U.S.C. § 1226(a) and its implementing regulations. *See id.* ¶¶ 27-41. Specifically, Petitioner alleges that "no immigration officer . . . has conducted an individualized custody determination assessing whether Petitioner's continued detention is necessary to address flight risk, danger to the community, or the availability of conditions of release." *Id.* ¶ 19.[2]

In response, Respondents "assert that they have comported with the requirements of § 1226(a)" and that "Petitioner received a custody determination, noted on the Form I-286, *Notice of Custody Determination*." Resp. at 2. Respondents also assert that "an ICE Deportation Officer, notes the reasoning to detain Petitioner which is outlined in the I-213." *Id.* "Specifically, the officer notes that '[d]ue to the subject being a flight risk and a high likelihood of absconding prior to the issuance of a warrant, [the] arrest [was] conducted as [a] warrantless arrest.'" *Id.* (quoting Resp. Ex. 1 at 2, ECF No. 7-1). Respondents later provided a "Notice to Appear" ordering Petitioner to appear before an immigration judge on November 2, 2026, at 1:30 PM. *See* Resps.' Mot. for Relief Ex. 1 at 1, ECF No. 11-1; *see also* Resps.' Mot. for Relief at 4 n.3, ECF No. 11.

In reply, Petitioner asserts that "this matter appears materially indistinguishable from [*Escamilla v. Venturella*, No. 3:26-cv-00662; *Naranjo Sigueros v. Venturella*, No. 3:26-cv-00663; and *Centeno Zapata v. Venturella*, No. 3:26-cv-00667]" except that "the I-213 in this matter indicates that an unidentified officer purportedly determined that Petitioner was a flight risk prior to his warrantless arrest." Reply at 1-2, ECF No. 8. However, Petitioner also asserts that "Respondents do not provide any evidence of such—e.g., who made the factual determination; the

---

[2] The Court need not address Counts Three or Four of the Petition to grant relief. *See* Pet.

extent of inquiry forming the basis for this purported determination; the factual basis upon which the determination was purportedly made; and whether Petitioner was ever provided with notice of this assessment process (to the extent there was one) and an opportunity to be heard." *Id.* at 2.

The Show Cause Hearing was initially scheduled for October 28, 2026. *See* Order to Show Cause at 2, ECF No. 6. Respondents "[did] not intend to offer additional witnesses or documents and believe[d] this matter [could] be resolved without oral argument or evidentiary hearing." Resps.' Mot. for Relief at 2. Petitioner likewise believed "that this court may order Petitioner's release without a hearing" and "defer[ed] to the Court as to whether oral argument would assist in its decision-making process." Pet.'s Notice, at 1-2, ECF No. 12. Accordingly, the Court canceled the Show Cause Hearing and decided the matter on the record before it, granting relief to Petitioner on October 27, 2026. *See* Order, ECF No. 13.

## II. LEGAL STANDARD.

A petitioner may be entitled to habeas corpus relief if a district court determines the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (citations omitted); 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving unlawful custody by a preponderance of the evidence. *Post v. Boles*, 332 F.2d 738, 740 (4th Cir. 1964). "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. DISCUSSION.

In its Order granting relief, this Court found that "Respondents have failed to meet their burden of demonstrating that Petitioner received an individualized custody determination consistent with 8 U.S.C. § 1226(a) and consistent with due process." Order at 2. As in *Escamilla v. Venturella*, No. 3:26-cv-00662, ECF No. 25, this Court finds that Respondents' failure to

provide Petitioner with an individualized custody determination violates both § 1226(a) and its implementing regulations and the Constitution's Due Process clause. Specifically, the record reflects that Respondents have failed to meaningfully exercise their discretion and have thus denied Petitioner a fundamental feature of due process—a sufficient opportunity to be heard. Accordingly, this Court's opinion in *Escamilla* is adopted and provides a basis to grant relief.

The Court notes that the record here differs from *Escamilla* in two key respects: Respondents allege that (1) they provided the reason for detaining Petitioner in the I-213 and (2) they provided Petitioner a Notice to Appear before an immigration judge. *See* Resp. at 2; Resps.' Mot. for Relief at 4 n.3. However, these details do not meaningfully change the Court's analysis.

First, the I-213 itself reflects a failure to apply discretionary judgment in deciding whether Petitioner was a flight risk. Respondents' timeline establishes that Petitioner was arrested before his custody determination. *See* Resp. at 8 ("Here, after a finding of probable cause that the Petitioner was in the country unlawfully and subsequent arrest, Petitioner was immediately brought before an officer authorized to issue arrest warrants and make initial custody determinations."). Yet, Respondents state that Petitioner's arrest was "warrantless" due to him "being a flight risk and a high likelihood of absconding." Resp. Ex. 1 at 2. Hence, Respondents must have determined that Petitioner was a flight risk *before* any custody determination took place. This categorical determination reflects the same lack of discretion as the rest of the record. The statement's plural pronoun usage also presents the same "indicia of unreliability." *See* Reply at 2 n.2 (" . . . *these arrests were conducted as warrantless arrests*.") (quoting Resp. Ex. 1 at 2).

Second, an opportunity to appeal before an immigration judge does not relieve Respondents of their requirement to conduct a discretionary determination under § 1226(a). A redetermination hearing "is no substitute for the requirement that [the immigration officer] engage

in a deliberative process prior to, or contemporaneous with" the initial determination. *Cruz-Reyes v. Bondi*, 818 F. Supp. 3d 875, 885–86 (S.D. Tex. 2026) (citations omitted). Moreover, if immigration officers "detain noncitizens categorically without any assessment of their individual circumstances, the initial custody determination [becomes] a mere formality, effectively collapsing the two-step framework into a single substantive determination by the Immigration Judge." *A.J.P.S., v. Jason Benzel*, No. 1:26-CV-11858, 2026 WL 3131270, at *4 (D.N.J. Oct. 19, 2026).

While the above basis is sufficient to grant relief, Petitioner's request for review by an immigration judge presents a second basis on which to grant relief. The record reflects that Respondents have failed to provide Petitioner with the reason for his custody determination and have thus denied Petitioner another fundamental feature of due process—sufficient notice. Accordingly, the Court will discuss this basis for relief for the remainder of the opinion.[3]

The Court first analyzes whether 8 U.S.C. § 1226(e) precludes its review of the Petition. The Court next outlines 8 U.S.C. § 1226(a) and then evaluates whether Respondents have provided Petitioner the requisite notice under § 1226(a). Finally, the Court analyzes whether Respondents' failure to provide notice has deprived Petitioner of due process under the *Mathews* test.

**A. 8 U.S.C. § 1226(e)**

The Immigration and Nationality Act permits detention of aliens pending the outcome of removal proceedings under § 1226. Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under [§ 1226] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

[3] In contrast to the petitioners in *Escamilla*, *Naranjo Sigueros*, and *Centeno Zapata*, Petitioner here checked the "I do" box in his Form I-286, requesting review by an immigration judge. *See* Resp. Ex. 1 at 6. However, the Court does not mean to suggest that failing to check this box amounts to *not* requesting review. That is a question of fact dependent on a detainee's understanding of the form and the surrounding circumstances.

In *Nielsen v. Preap*, 586 U.S. 392, 394 (2019), a plurality of the Supreme Court stated that § 1226(e) "applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases." In other words, § 1226(e) only bars review of decisions that are *both* (1) discretionary and (2) applications of § 1226 to particular cases. In *Miranda v. Garland*, 34 F.4th 338, 353 (4th Cir. 2022), the Fourth Circuit explicitly adopted this view, holding that it had jurisdiction over a decision that "may very well be" (1) discretionary but *was not* (2) the "application of § 1226 to [a] specific case[]." Under this view, this Court also has jurisdiction over any decision that was (2) an application of § 1226 to a specific case but *was not* (1) discretionary.

Here, Petitioner does not challenge a discretionary decision by Respondents. Rather, he challenges whether he "was ever provided with notice . . . and an opportunity to be heard" to begin with. Reply at 4; *see also Pet.* ¶¶ 28-40. The extent of Respondents' duty to provide "notice and three opportunities to seek release" under § 1226(a) is not a matter of discretion but is subject to judicial review. *See Miranda*, 34 F.4th at 345; *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("The aliens here, however, do not seek review of the [government's] exercise of discretion; rather, they challenge the extent of the [government's] authority under [8 U.S.C. § 1231(a)(6)]. And the extent of that authority is not a matter of discretion.").

This Court does not assert any jurisdiction over an immigration officer's exercise of discretion in deciding whether a detainee is a flight risk or danger to the community. That review is precluded by § 1226(e) and plainly delegated to immigration judges in the § 1226(a) framework outlined below. However, where a detainee challenges whether an immigration officer is complying with the § 1226(a) framework itself, § 1226(e) does not bar this Court's review.

Moreover, an immigration judge's review here would be improper. Where Petitioner alleges that Respondents have failed to provide any substantive determination of their own, an

immigration judge's review would "effectively collaps[e] the two-step [appeal] framework into a single substantive determination by the Immigration Judge." *A.J.P.S.*, 2026 WL 3131270, at *4. Thus, this Court's review is proper, and release is the proper remedy.

**B. 8 U.S.C. § 1226(a).**

"Separate provisions of § 1226 provide the government with authority to detain aliens." *Miranda*, 34 F.4th at 346. "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

"Even though the Attorney General may detain an alien during removal proceedings, the Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention." *Miranda*, 34 F.4th at 346. In other words, aliens have three *opportunities to be heard* under § 1226(a). During each opportunity, it is the alien's burden "to prove that he or she is not a danger to the community or a flight risk." *Id.* at 347 (citing 8 C.F.R. § 236.1(c)(8); 8 C.F.R. § 1236.1(c)(8); *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)). "The factors in determining risk may include any or all of the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States."

*Id.* at 362 n.10 (quoting *In re Guerra*, 24 I. & N. Dec. at 40). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." *Id.* at 362.

The first opportunity "occurs almost immediately upon an alien being detained" before an immigration officer. *Id.* at 362. "An immigration officer is authorized to release the alien if the

officer is satisfied that the alien is not a danger to the community or a flight risk." *Id.* at 346 (citing § 236.1(c)(8)). The immigration officer's detention decision is explicitly discretionary. *See* §§ 236.1(c)(8), 1236.1(c)(8) (". . . in the officer's discretion . . .."). A Notice of Custody Determination (Form I-286) is intended to "memorialize[]" this initial detention decision. *Aroca v. Mason*, 819 F. Supp. 3d 517, 530 n.14 (S.D.W. Va. 2026) (Goodwin, J.).

The second opportunity "occurs soon thereafter" at a hearing before an immigration judge. *Miranda*, 34 F.4th at 362. "If an immigration officer denies bond . . . an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." *Id.* at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). In other words, an alien may appeal the officer's *custody* determination—whether to release—to an immigration judge. *See* §§ 236.1(d), 1236.1(d)(1) (delegating authority to immigration judges to hear appeals from "initial custody determination[s]"); § 1003.19(a) ("Custody and bond determinations . . . may be reviewed by an Immigration Judge . . ..").

The third opportunity occurs, upon appeal, at a hearing before the Board of Immigration Appeals. *Miranda*, 34 F.4th at 347 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)).

Taken together, the above procedures "ensure that the government has a factual and legal basis for determining that a resident noncitizen's pre-removal detention is necessary[.]" *Nathanael Gebriel v. Todd Blanche*, No. 2:26-CV-02484-RFB-DJA, 2026 WL 3083762, at *5 (D. Nev. Oct. 15, 2026). Likewise, they "guarantee that the noncitizen has notice of said basis for their detention and an opportunity to be heard in rebuttal, as well as further review by a neutral decisionmaker." *Id.* As such, § 1226(a) provides "the fundamental features of due process—notice and an opportunity to be heard." *Miranda*, 34 F.4th at 362; *see also Mathews v. Eldridge*, 424 U.S. 319,

333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citation omitted).

**C. Notice.**

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "Under [§ 1226(a)'s] procedures, an alien is given notice and three opportunities to seek release by showing they are neither a flight risk nor a danger to the community." *Miranda*, 34 F.4th at 345.

**1. First opportunity to be heard.**

A detainee's first opportunity to be heard is before an immigration officer. *See* §§ 236.1(c)(8), 1236.1(c)(8). Before the immigration officer conducts a custody determination, the detainee must be given notice that (1) they are being provided an opportunity to "seek release" and (2) that this opportunity for release requires them to "show[] they are neither a flight risk nor a danger to the community." *See Miranda*, 34 F.4th at 345.

Here, Petitioner "denies that he was ever informed that immigration officials were even so much as contemplating the possibility that he might be released from custody" and "that he was ever informed that he had an opportunity to demonstrate his lack of flight risk or danger to the community." Reply at 3. Petitioner asserts that "Respondents' brief and exhibits do not establish or present any evidence to the contrary." *Id.* Petitioner also asserts that Respondents do not provide any evidence that "Petitioner was ever provided with notice of this assessment process (to the extent there was one) and an opportunity to be heard." *Id.* at 2.

The Court agrees. On the record before it, the Court finds no evidence that Respondents provided Petitioner with any notice that he had an opportunity to seek release by showing that he

was neither a flight risk nor a danger to the community. Respondents also waived their opportunity "to offer additional witnesses or documents" to prove otherwise. *See* Resps.' Mot. for Relief at 2.

Thus, the Court finds that Respondents have failed to provide Petitioner with notice of his opportunity to seek release and have thus denied Petitioner sufficient notice under § 1226(a).

**2. Second opportunity to be heard.**

A detainee's second opportunity to be heard before an immigration judge is an "appeal," a "review," and a "redetermination" of the immigration officer's custody determination below. *See* §§ 236.1(d)(1), 1236.1(d)(1); § 1003.19(a); *In Re Guerra*, 24 I. & N. Dec. at 37. A detainee "can be, and often are, represented by counsel" at these appeal hearings. *Miranda*, 34 F.4th at 362.

The detainee bears the burden of refuting the immigration officer's initial determination that the detainee is a danger to the community and/or a flight risk. *Miranda*, 34 F.4th at 347. In order to possibly bear this burden, the detainee must be given notice of *whether* they were determined to be a danger to the community, a flight risk, or both. In other words, the detainee must be "provided notice of the legal bases—*at minimum*—underlying the [immigration officer]'s custody determination, such that the [custody *redetermination*] hearing presents an opportunity to disprove and rebut the agency's determination." *Gebriel*, 2026 WL 3083762, at *4.

Moreover, the immigration judge's custody redetermination "may be based upon any information that is available to [them] or that is presented to [them] by the [detainee] or the [immigration officer]." *Miranda*, 34 F.4th at 362 n.10. Likewise, in order to possibly meet their burden—by knowing *what* information to present—the detainee must be given notice of *why* they were determined to be a danger to the community, a flight risk, or both. In other words, the detainee must be provided notice of the factual bases underlying the immigration officer's custody determination. *See also Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (holding that "a citizen-

detainee seeking to challenge his classification as an enemy combatant must receive notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker.").

Here, Petitioner asserts that Respondents do not provide any evidence of "the factual basis upon which the determination was purportedly made." Reply at 2. While Respondents provide a Form I-286, "[n]otably absent from the form is any mention of the factual bases for detention—*i.e.*, the reasons why the officer purportedly classified Petitioner as a flight risk and/or danger to the community." *Gebriel*, 2026 WL 3083762, at *8. "When a noncitizen is served with a Form I-286, and they do check the box seeking immigration judge review, a custody redetermination hearing is presumably scheduled. However, a noncitizen detainee like Petitioner is not given any notice of what standards govern that hearing, nor what evidence is permitted at that hearing. In fact, without notice of the factual bases for detention, Petitioner does not even have notice of the determination they are contesting." *Id.*

In other words, the Form I-286 fails to provide Petitioner with (1) the *legal* basis for the custody determination—*whether* Petitioner was classified as a flight risk, danger to the community, or both; or (2) the *factual* basis for the custody determination—*why* Petitioner was classified as a flight risk, danger to the community, or both. *See* Resp. Ex. 1 at 6.

The "Notice to Appear" that Respondents provide also fails to provide Petitioner with notice of any legal or factual basis for detention. *See* Resps.' Mot. for Relief Ex. 1. Indeed, the allegations listed are hopelessly misleading as to Petitioner's burden at the hearing. *See id.* at 1, 4. Petitioner is not charged with proving that he is a citizen of the United States or in possession of a valid visa. These allegations could be levied against anyone arrested by ICE and are inadequate bases for discretionary, not categorical, detention. Instead, Petitioner was presumably charged with

being a flight risk, danger to the community, or both. However, even that determination remains unclear in the record, and more importantly, unclear to Petitioner.

Respondents also assert that "an ICE Deportation Officer[] notes the reasoning to detain Petitioner . . . in the I-213." Resp. at 2. However, this note fails to provide Petitioner with the legal basis, much less the factual basis, for his detention. First, it provides a flight risk determination as the reason for warrantless arrest, not the reason for detention. *See* Resp. Ex. 1 at 2 ("Due to the subject being a flight risk and a high likelihood of absconding prior to the issuance of a warrant, these arrests were conducted as warrantless arrests."). Second, it provides the Court with notice, not Petitioner. Indeed, according to the I-213, "ERO officers informed [Petitioner] that he was under arrest for violating immigration laws[,]" not because he was found to be a flight risk. *Id.*

Thus, the Court finds that Respondents have failed to provide Petitioner with the reason for his custody determination and have thus denied Petitioner sufficient notice under § 1226(a).

**D. Due Process.**

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Courts evaluate procedural due process challenges under the balancing test within *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under this test, courts consider three distinct factors:

> First, *the private interest* that will be affected by the official action; second, *the risk of an erroneous deprivation* of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, *the Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> *Mathews*, 424 U.S. at 335 (emphasis added).

In *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022), the Fourth Circuit found that the procedures adopted by § 1226(a) and its implementing regulations satisfy the *Mathews* test and thus "do not violate the Constitution's Due Process Clause." *Miranda*, 34 F.4th at 365.

Here, the Court finds that Respondents' *failure* to provide sufficient notice—consistent with § 1226(a) and the fundamental features of due process—fails the *Mathews* test and thus violates the Constitution's Due Process Clause.

**1. Private Interest.**

The first *Mathews* factor is the private interest affected by the process used. Here, it is Petitioner's interest in freedom from detention, as affected by Respondents' failure to provide notice consistent with § 1226(a) and its implementing regulations. Freedom from detention is "a liberty interest which 'lies at the heart of the liberty that [the Due Process] Clause protects.'" *Miranda*, 34 F.4th at 359 (quoting *Zadvydas*, 533 U.S. at 690). This interest is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

However, this Court must also "recognize and incorporate into its analysis Supreme Court precedent establishing that aliens are due less process when facing removal hearings than an ordinary citizen would have." *Miranda*, 34 F.4th at 361. "The Supreme Court has stated over and over that in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 359 (citation omitted); *but see Demore v. Kim*, 538 U.S. 510, 511 (2003) n.9 ("[This statement] cannot be read to leave limitations on the liberty of aliens unreviewable.").

Yet, here, Petitioner does not challenge § 1226(a) nor any other rules made by Congress. Instead, Petitioner challenges Respondents' alleged failure to comply with § 1226(a) as mandated by Congress, implemented by federal agencies, and upheld by the Fourth Circuit. Specifically,

Petitioner alleges that Respondents have failed to provide Petitioner with sufficient notice of his first and second opportunities to be heard under the § 1226(a) framework.

The § 1226(a) framework reflects a careful balance between the competing considerations of Congress's broad power over immigration, agency discretion, noncitizen status, and freedom from detention, upheld by providing a detainee with "notice and three opportunities to seek release[.]" *See Miranda*, 34 F.4th at 362. Without this notice, this careful balance is thrown off, and the detainee's liberty interest is compromised.

Thus, the Court finds that the private interest here weighs in favor of Petitioner.

**2. Risk of Erroneous Deprivation.**

The second *Mathews* factor is the risk of an erroneous deprivation of the private interest through the government's process and the probable value that a substitute process would reduce that risk. Here, it is the risk of erroneous detention because of Respondents' failure to provide notice consistent with § 1226(a), and its implementing regulations, and the probable value that providing such notice would reduce that risk.

The Fourth Circuit found that "aliens already receive the fundamental features of due process—notice and an opportunity to be heard" under § 1226(a), while analyzing that framework's risk of an erroneous deprivation of liberty. *Miranda*, 34 F.4th at 362. Specifically, under "[the § 1226(a)] procedures, an alien is given notice and three opportunities to seek release by showing they are neither a flight risk nor a danger to the community." *Id.* at 345. Without either of these fundamental features of due process, the risk of erroneous deprivation looms large.

As discussed *supra*, Respondents have denied Petitioner sufficient notice of his opportunities to be heard by (1) failing to disclose the initial custody determination altogether and

(2) failing to provide any legal or factual basis for that determination. As such, Respondents have denied Petitioner a fair opportunity "to make [his] case." *See Miranda*, 34 F.4th at 364.

Respondents' failure to provide sufficient notice to Petitioner of his first opportunity to be heard heightens the risk of erroneous, immediate detention. When a detainee is not informed of his opportunity to seek release by showing his lack of flight risk and danger to the community, he is denied a fair opportunity to meet that burden. Hence, there is a heightened risk that his immediate detention will be erroneous.

Respondents' failure to provide sufficient notice to Petitioner of his second opportunity to be heard heightens the risk of erroneous, continued detention. When a detainee is not informed of *whether* or *why* he was judged to be a flight risk or danger to the community, he is denied a fair opportunity to rebut that determination on appeal. Hence, there is a heightened risk that his continued detention will be erroneous.

Thus, the Court finds that Respondents' failure to provide Petitioner sufficient notice of his opportunities to be heard carries a substantial risk of an erroneous deprivation of liberty and that providing such notice consistent with § 1226(a) would mitigate such a risk.

**3. Government's Interest.**

The third *Mathews* factor is the government's interest in using its current process and the burdens it would incur in using a substitute process. Here, it is Respondents' interest in failing to provide notice consistent with § 1226(a) and the burdens they would incur in providing such notice.

This Court "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Miranda*, 34 F.4th at 364 (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). "Importantly, during the deportation process, that government interest includes detention." *Id.* However, the government's

principal interest in immigration detention is "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

Here, the government's interest in control over matters of immigration is best served by following their own procedures as mandated by Congress under § 1226(a) and implemented by federal agencies under §§ 236.1(d)(1), 1003.19(a), and 1236.1(d)(1). *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Moreover, its interest in ensuring appearance at future immigration proceedings and preventing danger to the community is best served by *accurate* determinations of flight risk or danger to the community. In an adversarial system, sufficient notice can only further aid the finder of fact in reaching a *more accurate* determination. *See Miranda*, 34 F.4th at 362 n.10 (The immigration judge's determination "may be based upon any information that is available to [them] or that is presented to [them] by the [detainee] or the [immigration officer].").

As such, providing notice consistent with § 1226(a) and its implementing regulations may also reduce the fiscal and administrative burden of immigration detention by further "limiting detention to noncitizens who are actually dangerous or a flight risk." *Gebriel*, 2026 WL 3083762, at *9. Indeed, "[r]ecent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day." *Jacobo-Ramirez v. Mullin*, 834 F. Supp. 3d 1073, 1119 (D. Nev. 2026) (citation omitted). "Similarly, the public interest is served by the procedures under § 1226(a), as these limit the 'substantial societal costs' that 'unnecessary detention imposes' by 'separat[ing] families and remov[ing] from the community breadwinners, caregivers, parents, siblings[,] and employees.'" *Gebriel*, 2026 WL 3083762, at *9 (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021)).

Thus, the Court finds that the government's interests are best served by providing sufficient notice consistent with § 1226(a) and that its administrative, financial, and societal burdens would be reduced by providing such notice.

Therefore, the Court finds that Respondents' failure to provide sufficient notice—consistent with § 1226(a) and the fundamental features of due process—fails the *Mathews* test and violates the Constitution's Due Process Clause.

## IV. CONCLUSION.

The Court finds that Respondents have failed to provide Petitioner with sufficient notice and have thus violated § 1226(a) and its implementing regulations. The Court also finds that this failure deprives Petitioner of due process under the *Mathews* test and thus also violates the Constitution's Due Process Clause. This Court's opinion in *Escamilla* is also adopted as a separate basis on which to grant relief.

For the foregoing reasons, the Court **GRANTED** the Petition, ECF No. 1, and **DENIED** Respondents' Motion to Dismiss, ECF No. 7.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented party.

ENTER: November 3, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE